IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTRASSICA PETE, <br><br> PLAINTIFF, <br><br> VS. <br><br> TAMERON AUTOMOTIVE EASTERN SHORE, LLC AND WESTLAKE SERVICES, LLC, <br><br> DEFENDANTS. | Case No.: 21-261 |

## COMPLAINT

### INTRODUCTION

1. Plaintiff herein is a victim of a yo-yo car sales scam. According to Delvin Davis from the Center for Responsible Lending:

> A yo-yo scam occurs when a consumer is led to believe, through acts or omissions by a car dealer providing financing, that the loan financing is final when in fact the dealer has not finalized the financing at all. The dealer can cancel the agreed-upon deal if it decides that none of the offers to purchase the loan contract by third-party purchasers are acceptable. Yo-yo scams are possible because of the pervasive practice of conditioning finance contracts on the dealer's decision to accept, or reject, purchase offers from third parties. (Foot note omitted).

2. This is exactly what has happened here. Plaintiff, who needed a vehicle for day-to-day transportation and her work, drove 50 miles, one way, to the Tameron dealership in Daphne, Alabama to buy a car. She thought she had purchased one but instead she got the yo-yo.

### JURISDICTION AND VENUE

3. This Action is brought under the Truth-in-Lending Act, 15 U.S.C. § *et seq.* and its implementing Regulation Z, 12 C.F.R. Part 226 ("TILA"), Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq* ("ECOA") and state law.

4. The jurisdiction in this Court is proper according to 28 USC § 1331, as Plaintiff has claims that arise under the laws of the United States.

5. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claims herein.

6. Venue in this District is proper under 28 USC § 1391 because Tameron transacts business in this District and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff is an African American woman who resides in Atmore, Alabama.

8. Tameron Automotive Eastern Shore, LLC (hereinafter "Tameron") is an Alabama Limited Liability Company that does business in this district.

9. Westlake Services, LLC is a foreign limited liability company that does business in Alabama.

10. This Court has jurisdiction under 15 U.S.C. § 1640 and 28 U.S.C. § 1334.

11. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), because the acts and transactions giving rise to Plaintiff's Action occurred in this District.

## FACTUAL ALLEGATIONS

12. On March 22, 2021, Plaintiff purchased a 2018 Toyota Camry, VIN 4T1B11HK9JU137624 from Tameron Automotive Eastern Shore, LLC ("Tameron").

13. Plaintiff does a lot of driving and had been shopping for a dependable automobile.

14. She saw Tameron's website listing a Toyota Camry for sale and drove from Atmore, Alabama to see it.

15. Plaintiff liked the Camry and decided to purchase it.

16. After keeping Plaintiff at the dealership for hours, the salesman rushed her through the execution of purchase documents.

17. One of the documents was a Retail Installment Sale Contract ("RISC"), The RISC indicates that $900.00 was paid to "Optional GAP Contract" and that $2,000 was paid to "SERVICE CONTRACT" for "SRV. CONTRACT" when, in fact, Tameron kept some or all of these charges.

18. The RISC listed the lender as Tameron.

19. When the dealer arranges financing, it is the usual practice for the dealer to initially finance a purchase and then sell that purchase contract to another entity. That is what would have happened here but apparently Tameron did not get the price it wanted.

20. Tameron was both the seller and the initial lender.

21. The Truth-in-Lending Act disclosure contained in the RISC included the charges for "Optional GAP Contract" and "SRV. CONTRACT" in the Amount Financed.

22. The RISC also called for the following terms:

| | |
|---|---|
| Annual Percentage Rate | 26.39% |
| Finance Charge | $21,541.84 |
| Amount Financed | $21,056.96 |
| Total of Payments | $42,598.80 |

23. During the negotiations for the purchase of the Vehicle, Tameron's employee represented to Plaintiff that she was required to purchase GAP insurance and an extended warranty a.k.a., the "Vehicle Service Agreement" before the Loan could be approved.

24. Plaintiff purchased the GAP insurance as well as the "Vehicle Service Agreement" for the Vehicle based upon Tameron's representation that they were required in order for her Loan to be approved.

25. Because the Gap insurance and the "Vehicle Service Agreement" was required incident to the extension of credit, those charges should have been included in the Finance Charge instead of the Amount Financed.

26. The failure to state an accurate finance charge and APR creates a material risk of harm and leads to the very harm that Congress wanted to avoid when it enacted TILA. These transaction-specific price tags, given before the consumer signs on the dotted line, provide the consumer with critical information about the terms of the legal obligation represented in the Loan Note. An understated finance charge and APR lowball the cost of credit. The consumer is harmed in a concrete way because she cannot successfully comparison shop, is misled about the loan terms and pays more for the credit than represented to her.

27. On information and belief, it is a common practice for Tameron to require the purchase of add-on products such as GAP insurance, extended warranties and Vehicle Service Agreements[1] when it finances a vehicle purchase.

28. Plaintiff would not have purchased GAP insurance or "Vehicle Service Agreement" if the salesperson had not represented that they were required in order for the purchase to be financed.

29. To complete her purchase, Plaintiff signed several documents that Tameron's salesman presented to her.

30. Later, when she received a copy of the documents, she noticed that her signature had been forged on some of them.

31. The documents with forged signatures included the following:

---

[1] The terms "extended warranty" and "Vehicle Service Agreement" are interchangeable as used herein.

> ➤ "Vehicle Service Agreement" dated 03/22/2021; and

> ➤ "Gap Addendum" dated 3/24/2021.

32. After signing the documents that she was directed to sign, Plaintiff took possession of the Vehicle.

33. Several days later a representative from either Tameron or Westlake called Plaintiff and told her that she did not qualify for the Loan and to return the vehicle to the dealership.

34. Plaintiff returned the vehicle on April 28, 2021.

35. On information and belief, at all relevant times both Westlake and Tameron discriminated against Plaintiff because of her sex and race by increasing cost of financing, the sales price of the Vehicle and Extended Warranty(s) herein and, based on the sex and race of Plaintiff.

36. She was charged more than the average customer would have been charged solely because of her race and sex.

## COUNT ONE
## VIOLATIONS OF 15 U.S.C. § 1638(A)

37. The relevant allegations stated in the above paragraphs are incorporated as if fully asserted herein.

38. The Truth-in-Lending Act, at 15 USC § 1605(a) and 12 C.F.R. 226.4(a) defines "finance charge" as "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."

39. Tameron's employee and an employee of Westlake represented to Plaintiff that the purchase of GAP insurance and a service contract was necessary before her Loan would be approved.

40. As a result of those representations, Plaintiff purchased both GAP insurance and an extended warranty, which she would not have purchased but for the representations.

41. Since Tameron made the purchase of GAP insurance and an extended warranty a condition of the financing the transaction, TILA requires the cost of the GAP coverage and the extended warranty to be included as finance charges when calculating the "Amount Financed", the "annual percentage rate" and the "finance charge" on the TILA disclosure.

42. By not including the cost of the GAP coverage or the extended warranty in the "finance charge" stated in the Contract, Tameron did not disclose the actual "finance charge" associated with the transaction in the Truth-in-Lending disclosures provided to Plaintiff.

43. Likewise, since Tameron did not include the amount paid for the GAP coverage or the extended warranty in the "finance charge", Tameron did not disclose the actual "finance charge expressed" as an "annual percentage rate" in the Truth-in-Lending Disclosures provided to Plaintiff.

44. Because Tameron included the amount paid for the GAP coverage or the extended warranty in the "Amount Financed", Tameron therefore did not disclose the actual "Amount Financed" in the Truth-in-Lending disclosures provided to Plaintiff.

45. Tameron violated 15 U.S.C. § 1638(a)(2)(A) when it failed to accurately disclose the "Amount Financed" to Plaintiff.

46. Tameron violated 15 U.S.C. § 1638(a)(3) when it failed to accurately disclose the "finance charge" to Plaintiff.

47. Tameron violated 15 U.S.C. 1638(a)(4) when it failed to accurately disclose the finance charge expressed as an "annual percentage rate" to Plaintiff.

**WHEREFORE**, Plaintiff demands an award for willful and/or negligent violation of the Truth-in-Lending Act for actual damages, statutory damages, attorney fees and costs of this Action.

## COUNT TWO
## TRUTH-IN-LENDING ACT VIOLATIONS

48. Plaintiff incorporates the relevant foregoing paragraphs in this Complaint as if fully set out.

49. The transaction at issue is a consumer transaction and is subject to the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*

50. In addition, on information and belief, the $2,000 charge for "NATIONAL WARR" "EXT. SRV. CON" was padded, not accurately disclosed and contained charges related to other things.

51. This price increase constitutes an undisclosed finance charge.

52. Defendant violated the requirements of Truth-in-Lending and Regulation Z in the following and other respects:

   a. By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 1026.17; and

   b. By failing to properly disclose the Finance Charges and Amount Financed.

53. These violations were apparent on the face of the contract and documents.

**WHEREFORE,** Plaintiff demands an award for willful and/or negligent violation of the Truth-in-Lending Act and seeks actual damages, statutory damages, attorney fees and costs of this Cause.

## COUNT THREE
## EQUAL CREDIT OPPORTUNITY ACT VIOLATIONS

54. Plaintiff incorporates the relevant foregoing paragraphs in this Complaint as if fully set out.

55. Defendants violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, by discriminating against Plaintiff on account of her sex and race by requiring, among other things, an increase in the price of the transaction including the purchase price and APR.

56. The cost of the automobile and financing at issue were higher than that available to other persons in a comparable transaction.

57. Additionally, neither Defendant complied with the notification requirements of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, set forth in Regulation B, 12 C.F.R. §202.9(a)(1)(i) and had otherwise violated the ECOA.

**WHEREFORE** Plaintiff demands an award for willful and/or negligent violation of the Equal Credit Opportunity Act and seeks actual damages, statutory damages, attorney fees and costs of this Cause.

## COUNT FOUR
## FTC HOLDER RULE AND WESTLAKE'S LIABILITY UNDER THE CONTRACT FOR PLAINTIFF'S CLAIMS AGAINST THE SELLER

58. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this Complaint.

59. Pursuant to the Federal Trade Commission's "Holder Rule", and pursuant to the language in the Security Agreement subjecting the holder of the contract liable for all claims and defenses Plaintiff has against the seller, Westlake is liable to Plaintiff for all of her claims against Tameron.

**WHEREFORE**, Plaintiff demands Judgement for compensatory and punitive damages.

**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN.**

Respectfully submitted this on the 2nd day of June 2021.

        */s/ Earl P. Underwood, Jr.*
        **EARL P. UNDERWOOD, JR. (UNDE008)**
        **21 South Section Street**
        **Fairhope, Alabama 36532**
        **Phone: (251) 990-5558**
        **Facsimile: (251) 990-0626**
        **Email: epunderwood@alalaw.com**
        *Attorney for Plaintiff Antrassica Pete*

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

**Tameron Automotive Eastern Shore, LLC**
**c/o Registered Agent Thomas Acheson**
**1675 Montgomery Highway**
**Birmingham, Alabama 35216**

**Westlake Services, LLC**
**c/o Registered Agent Corporate Creations Network, Inc.**
**4000 Eagle Point Corporate Drive**
**Birmingham, Alabama 35242**